# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

| | | |
|---|---|---|
| **REV. JESSE G. ANDERSON, JR.,** | : | |
| **Executive Director;** | : | |
| **TEEN CHALLENGE REFERRAL** | : | |
| **CENTER, INC.**[1]**, et al.,** | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action No. 7:05-cv-97 (HL) |
| | : | |
| **JOYCE D. WALKER, Vice** | : | |
| **President/Bank Manager;** | : | |
| **BANK OF AMERICA,** | : | |
| **INC.,** | : | |
| | : | |
| Defendants. | : | |

_____

## <u>ORDER</u>

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Amended

Complaint (Doc. 27).  After consideration of the Motion and the briefs of the parties,[2] and as

more fully set forth below, the Court hereby grants the Motion.

_____

[1] Anderson filed his original complaint in his name and on behalf of the Teen Challenge Referral Center, Inc.  In an Order entered January 10, 2006, the Court allowed Anderson to amend his complaint, but informed Anderson that, as a non-lawyer, he could not bring a claim on behalf of a corporation. Despite this admonishment, Anderson's amended complaint attempts to bring claims on behalf of the Teen Challenge Referral Center, Inc.  Because Anderson cannot bring claims on behalf of the corporation, all claims brought against these Defendants by Anderson on behalf of the Teen Challenge Referral Center are dismissed.

[2] Anderson's brief did not address the merits of the Motion to Dismiss. Instead, Anderson, who was in jail when his response was due, claimed that he lacked the resources necessary to file a response. Anderson's brief was filed on May 18, 2006.  His filings with the Court show that by at least July 24, 2006, Anderson was out of jail.  However, he has not made any attempt to file a more substantive brief.

## I.      ALLEGATIONS OF THE AMENDED COMPLAINT

Anderson, who is African-American and a member of the Cherokee/Black Foot Indian tribe, contends that in August of 2005 Joyce D. Walker refused to allow him to set up a corporate checking account in the name of Teen Challenge Referral Center, Inc.  He alleges that even though he had the proper documentation for establishing a corporate checking account, he was not allowed to do so.  Walker is employed by Bank of America, Inc.  Anderson alleges that he was treated differently by Walker and Bank of America because of his race.  He brings his claims pursuant to 42 U.S.C. §§ 1964, 1982, 1983, and 1985.  He also alleges violations of 15 U.S.C. § 1691, and also alleges violations of his rights under the Fifth and Fourteenth Amendments to the Constitution of the United States.  He has named as Defendants Bank of America, Inc., and Walker.  The Court will consider the complaint as it pertains to each of the foregoing causes of action.

## II.     ANALYSIS

### A.      42 U.S.C. § 1964

Anderson maintains that he is bringing his complaint pursuant to, among other things, 42 U.S.C. § 1964.  As Defendants note in their Memorandum of Law in Support of Motion to Dismiss, Title 42 does not contain a section 1964.  Anderson may not, of course, maintain a claim under a nonexistent provision..[3]  Therefore, Anderson's claims, insofar as they are brought

---

[3] It could be that Anderson intended to bring his claim under 18 U.S.C. § 1964, which provides a civil remedy for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 to 1968.  However, the complaint fails to set forth the elements of a civil RICO cause of action:

To state a RICO claim, a plaintiff must allege "(1) conduct (2) of an enterprise

pursuant to 42 U.S.C. § 1964, are dismissed.

**B.      42 U.S.C. § 1982**

Section 1982 of Title 42 of the United States Code provides as follows:  "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C.A. § 1982 (West 2003).  As the language of the statute shows, § 1982 is intended to redress discrimination in housing.  The United States Court of Appeals for the Eleventh Circuit has said that the elements of a claim under § 1982 are the same as the requirements for stating a claim under § 804 of the Fair Housing Act, except that a plaintiff making a claim under § 1982 is required to allege intentional discrimination.  Jackson v. Okaloosa County, Fla., 21 F.3d 1531, 1543 (11th Cir. 1994).

To state a claim under § 1982, therefore, a plaintiff "must allege unequal treatment on the basis of race that affects the availability of housing," and also must allege that the unequal treatment stems from intentional discrimination.  Id. at 1542-43.  Nothing in Anderson's

---

(3) through a pattern (4) of racketeering activity."  A "pattern of racketeering" consists of at least two predicate acts of racketeering committed within a ten-year period. Predicate acts are acts indictable under a specified list of criminal laws found at 18 U.S.C. § 1961(1). . . . The pattern element is not formed by "sporadic activity;" rather, the Court has held that the term "pattern" itself requires a showing of a relationship between the predicates and a threat of continuing activity.  Thus, in order to establish a pattern of racketeering activity, . . . , a plaintiff must show that the racketeering predicates are related and that they amount to or pose a threat of continued criminal activity.

Bajorat v. Columbia-Breckenridge Dev. Corp., 944 F. Supp. 1371, 1378 (N.D. Ill. 1996) (citations omitted).  Nothing in plaintiff's complaint satisfies these requirements.

3

complaint pertains to housing or the unavailability of housing and nothing in his allegations suggests that the wrongful conduct attributed to Defendants impacted his right to buy or sell property.  Therefore, Anderson's complaint fails to state a claim under § 1982, and Anderson's claims, insofar as they are brought pursuant to § 1982, are dismissed.

**C**      **42 U.S.C. § 1983**

Section 1983 of Title 42 of the United States Code provides, in part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C.A. § 1983 (West 2003).  As the Supreme Court of the United States has explained, a plaintiff seeking to state a claim for relief under § 1983 must establish a deprivation of a right secured by the Constitution or laws of the United States and must also allege that the deprivation was committed under color of state law.  *See, e.g.,* Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50, 119 S. Ct. 977, 985 (1999).  As the Court also explained in Sullivan, private action is beyond the reach of § 1983:  "Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'"  Id. at 50, 119 S. Ct. at 985 (quoting Blum v. Yaretsky, 457 U.S. 991, 1002, 102 S. Ct. 2777 (1982)).

Here, Anderson's claim for relief under § 1983 is brought against a bank and its employee–both private actors.  Nothing in Anderson's amended complaint suggests state action.

4

In the absence of any allegations in the complaint that the deprivations of which Anderson complains were committed under color of state law, he has failed to state a claim for relief under § 1983. Accordingly, Anderson's claims, insofar as they are brought under § 1983, are dismissed.

### D.    42 U.S.C. § 1985

Anderson contends his complaint is brought pursuant to 42 U.S.C. § 1985.[4] The Supreme Court has identified the elements of a § 1985(3) claim as "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." United Bhd. of Carpenters & Joiners of Am. v. Scott, 463 U.S. 825, 828-29, 103 S. Ct. 3352, 3356 (1983). In order to maintain a claim under § 1985(3), the plaintiff must show that the defendants were motivated by racial or class-based "invidiously discriminatory animus." Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S. Ct. 1790, 1798 (1971). *See also* Burrell v. Bd. of Tr. of Ga. Military Coll., 970 F.2d 785, 793-94 (11th Cir. 1992) (stating elements of a claim and noting that the intent requirement of § 1985(3) "erects a significant hurdle for . . . plaintiffs").

Here, Anderson has set forth no allegations that would support a claim under § 1985. He

---

[4] 42 U.S.C. § 1985 has three subparts:  (1) Preventing officer from performing duties; (2) Obstructing justice; intimidating party, witness, or juror; and (3) Depriving persons of rights or privileges."  42 U.S.C.A. § 1985 (West 2003).  The Court presumes Anderson's claims are made pursuant to 42 U.S.C. § 1985(3).

has done no more than reference the statute. He has not identified the members of the conspiracy or identified an act in furtherance of the conspiracy. In the absence of any allegations that would support a claim under § 1985, Anderson has failed to state a claim for relief under § 1985. Accordingly, Anderson's claims, insofar as they are brought under § 1985, are dismissed.

### E.    Fifth Amendment

Anderson vaguely states that Defendants violated his rights under the Fifth Amendment. Anderson does not identify which of the many rights encompassed by the Fifth Amendment was allegedly violated by Defendants' actions. The Court will assume, however, that Anderson intended to allege that he was deprived of property without due process of law. Anderson's Fifth Amendment claims cannot be sustained against these Defendants. "The [F]ifth [A]mendment protects individuals only from the federal government's actions." Anthony v. Franklin County, 799 F.2d 681, 683 n.1 (11th Cir. 1986). *See also* Knoetze v. United States, 634 F.2d 207, 211 (5th Cir. 1981) (citing Perry v. Sindermann, 408 U.S. 593, 92 S. Ct. 2694(1972)) (stating that Fifth Amendment protection attaches "only when the federal government seeks to deny a liberty or property interest"). Defendants are private actors, not federal government employees. Therefore, Anderson's claims, insofar as he attempts to bring them directly under the Fifth Amendment, are dismissed.

### F.    Fourteenth Amendment

As with his Fifth Amendment claim, Anderson vaguely states that Defendants violated his rights under the Fourteenth Amendment. The Fourteenth Amendment has five sections;

Anderson has failed to identify which of the five sections he contends Defendants violated.  The Court will presume, however, that Anderson intended to bring his claim under the Equal Protection clause of section one, which provides:  "No State . . . shall deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend XIV, § 1.

Like 42 U.S.C. § 1983, the limitations imposed by the Fourteenth Amendment only apply to state conduct, and do not apply to private conduct:  "The Fourteenth Amendment acts as a shield against only the government.  The constitution does not affect the relations between private parties, 'however discriminatory or wrongful.'"  <u>Campbell v. United States</u>, 962 F.2d 1579, 1582 (11th Cir. 1992).  Here, Anderson has not alleged any state conduct; his allegations are against private parties only.  Therefore, Anderson's claims, insofar as he attempts to bring them directly under the Fourteenth Amendment, are dismissed.

**G.     15 U.S.C. § 1691**

Anderson alleges that Defendants' actions were in violation of 15 U.S.C. § 1691, which identifies prohibited activities under the Equal Credit Opportunity Act.  Specifically, § 1691 makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction–(1) on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract)."  15 U.S.C.A. § 1691(a) (West 1998).

While § 1691 sets forth the activities prohibited under the Equal Credit Opportunity Act, other portions of the Act set forth its definitions.  Under the Act, "credit" means "the right

7

granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor." 15 U.S.C.A. § 1691a(d) (West 1998). The term "creditor" means "any person who regularly extends, renews or continues credit; any person who regularly arranges for the extension, renewal or continuation of credit; or any assignee of an original creditor who participates in the decision to extend renew, or continue credit." 15 U.S.C.A. § 1691a(e) (West 1998).

> Under Georgia law, a check is an acknowledgment of indebtedness:

> A check executed and delivered is a contract in writing by which the drawer contracts with the payee that the bank will pay to the latter or his order the amount designated on presentation. [T]here is little difference between a check and a demand note. Both are acknowledgments of indebtedness and an unconditional promise to pay. It is elemental that a check is a written contract to be performed at the place of business of the person on whom it is drawn. The drawer of a check has the right, at any time prior to acceptance by the bank, to stop its payment. However, his revocation of the bank's authority to pay the check does not discharge his liability to the payee or holder. The situation becomes the same as if the check had been dishonored and notice thereof given to the drawer.

Mason v. Blayton, 166 S.E.2d 601, 603 (Ga. Ct. App. 1969) (internal quotations and citations omitted). However, the bank on which a check is drawn is not a creditor. To the contrary, a check is merely an order to the bank to pay from the account. Lambeth v. Lewis, 150 S.E.2d 462, 463 (Ga. Ct. App. 1966). A check serves to direct the drawee bank to pay the amount of the check to the bearer, but commits the drawer to pay the amount of the check even if it is dishonored by the bank. In re Paulk, 25 B.R. 913, 918 (M.D. Ga. 1982). The bank to whom the

check is presented has no liability for it until it accepts the check for payment.[5]  *See* O.C.G.A. § 11-3-408 (LexisNexis 2002).

Under the circumstances alleged in the amended complaint neither Defendant is a "creditor" as that term is defined by the Equal Credit Opportunity Act.  There is no allegation that the transaction which forms the basis of Anderson's complaint–an intent to open a corporate checking account–involved the extension, renewal or continuation of credit.  Anderson's allegations are insufficient to bring his claim within the Equal Credit Opportunity Act. Therefore, insofar as Anderson's claims are brought pursuant to 15 U.S.C. § 1691, those claims are dismissed.

## III.   CONCLUSION

The allegations of the amended complaint are insufficient to state a claim upon which relief can be granted.  Accordingly, Defendants' Motion to Dismiss Plaintiff's Amended Complaint is granted; Plaintiff's amended complaint is hereby dismissed.

**SO ORDERED**, this the 16th day of November, 2006.


**s/   Hugh Lawson**
**HUGH LAWSON, JUDGE**

mls

---

[5] A different result might obtain if overdraft protection or some other agreement was in place on the checking account that obligated the bank to honor a check even if the account lacks the necessary funds.  However, no such agreements are at issue here.